IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
VICTORIA DIVISION

| | |
|---|---|
| **MARCUS R. MUELLER,** § | |
| § | |
| Plaintiff, § | |
| § | |
| v. § | |
| § | **CIVIL ACTION V-07-104** |
| **MICHAEL J. ASTRUE,** § | |
| Commissioner, § | |
| Social Security Administration, § | |
| § | |
| Defendant. § | |

### MEMORANDUM OPINION AND ORDER

Pending before the Court are Plaintiff Marcus Mueller's ("Plaintiff") and Defendant Michael J. Astrue's ("the Commissioner") cross motions for summary judgment. (Dkt. Nos. 9 & 11.) After consideration of the motions, record, and applicable law, the Court finds that Plaintiff's motion should be DENIED and Defendant's motion should be GRANTED.

### Background

Plaintiff filed this action pursuant to 42 U.S.C. § 405(g) to review the decision of the Commissioner denying Plaintiff's application for supplemental security income. Plaintiff was 50 years old at the time he applied for benefits. (Tr. 50.)[1] He has had no work experience since 1986, but does have a high school education, one year of college, and training in security and private investigation. (Tr. 74.)

Plaintiff filed his application for benefits on December 29, 2004 (Tr. 83—88), alleging that he was disabled since September 1, 2004 due to an enlarged heart, liver problems, and back problems. (Tr. 23, 49—51 & 69.) His claims were denied by the

---

1. Citations to "Tr." refer to the administrative transcript. (Dkt. No. 7.)

1

Commissioner and again on reconsideration. (Tr. 23, 34—38 & 41—45.) He had a hearing before an Administrative Law Judge ("ALJ") on February 21, 2007. (Tr. 23 & 268—89.) The ALJ issued an opinion on May 25, 2007 finding that Plaintiff was not under a disability within the meaning of the Social Security Act. (Tr. 20—33.) The Appeals Council denied Plaintiff's request for review on September 28, 2007, and the ALJ's determination became the final decision of the Commissioner. (Tr. 3—19.) Plaintiff filed this action on November 19, 2007 seeking review of the Commissioner's final decision. (Dkt. No. 1.)

## Standard

The Court's review of the Commissioner's final decision to deny disability benefits is limited to two issues: (1) whether substantial record evidence supports the decision, and (2) whether proper legal standards were used to evaluate the evidence. *See Waters v. Barnhart*, 276 F.3d 716, 718 (5th Cir. 2002).

If the findings of fact contained in the Commissioner's decision are supported by substantial evidence, they are conclusive and this Court must affirm. The widely accepted definition of "substantial evidence" is more than a mere scintilla, but less than a preponderance. *Carey v. Apfel*, 230 F.3d 131, 135 (5th Cir. 2000). "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). In applying this standard, the Court is to review the entire record, but it may not reweigh the evidence, decide the issues de novo, or substitute the Court's judgment for the Commissioner's. *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999). Only if no credible evidentiary choices of medical findings exist to

2

support the Commissioner's decision should the Court overturn it.  *Johnson v. Bowen*, 864 F.2d 340, 343—44 (5th Cir. 1988).  The Court reviews the legal standards applied by the Commissioner de novo.

To claim entitlement to disability benefits, a claimant must show that he was disabled on or before the last day of his insured status.  *Demandre v. Califano*, 591 F.2d 1088 (5th Cir. 1979).  The legal standard for determining disability under the Act is whether the claimant is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).  To determine whether a claimant is capable of performing any "substantial gainful activity," the regulations provide that the Commissioner should evaluate disability claims according to the following sequential five-step process:

(1) A claimant who is working, engaging in a substantial gainful activity, will not be found to be disabled no matter what the medical findings are.

(2) A claimant will not be found to be disabled unless he has a "severe impairment."

(3) A claimant whose impairment meets or is equivalent to an impairment listed in an Appendix to the regulation will be considered disabled without the need to consider vocational factors.

(4) A claimant who is capable of performing work he has done in the past must be found "not disabled."

(5) If the claimant is unable to perform his previous work as a result of his impairment, then factors such as age, education, past work experience, and residual

functioning capacity must be considered to determine whether he can do other work. *See* 20 C.F.R. § 404.1520(b)—(f); *see also Bowling v. Shalala*, 36 F.3d 431, 435 (5th Cir. 1994).

To be entitled to benefits, a claimant bears the burden of proving that he is unable to engage in substantial gainful activity within the meaning of the Social Security Act. *See Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991). The claimant must show that he suffers from a mental or physical impairment that not only renders him unable to perform his previous work, but, given his age, education, and work experience, prevents him from engaging in any other kind of substantial gainful work that exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. *Johnson v. Harris*, 612 F.2d 993, 997 (5th Cir. 1980). However, if the claimant can show that he can no longer perform his previous job, the burden then shifts to the Commissioner to show that there exists some other form of substantial gainful employment the claimant can perform. *Fortenberry v. Harris*, 612 F.2d 947, 950 (5th Cir. 1980). By judicial practice, this translates into the claimant bearing the burden of proof on the first four of the above steps and the Commissioner bearing the burden on the fifth. *See Brown*, 192 F.3d at 498; *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994). The analysis stops at any point in the five-step process upon a finding that the claimant is or is not disabled. *See Greenspan*, 38 F.3d at 236.

**Analysis**

Following Plaintiff's February 21, 2007 hearing, the ALJ evaluated Plaintiff's disability claim according to the aforementioned five-step process and issued the following Findings of Fact and Conclusions of Law:

> 1. The claimant has not engaged in substantial gainful activity since September 1, 2004, the alleged onset date (20 CFR 416.920(b) and 416.971 *et. seq.*).
>
> . . .
>
> 2. The claimant has the following severe impairments: chronic low back pain, morbid obesity, and hypertensive cardiovascular disease (20 CFR 416.920(c)).
>
> . . .
>
> 3. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).
>
> . . .
>
> 4. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity[2] to lift and carry 20 pounds on occasion and 10 pounds on a frequent basis. He can stand/walk 6 hours in an 8-hour workday and sit 6 hours in an 8-hour workday with normal break periods. He can occasionally climb stairs and ramps, stoop, kneel, crouch and crawl, but he cannot balance, climb ladders, ropes or scaffolds, work at unprotected heights or work around dangerous moving machinery. He cannot do any overhead reaching and he needs a clean working environment.
>
> . . .
>
> 5. The claimant has no past relevant work (20 CFR 416.965).
>
> . . .
>
> 9. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy

---

2. "Residual functional capacity" (RFC) refers to the greatest capacity of an individual to do work despite any limitations. 20 C.F.R. § 416.945(a)(1).

>that the claimant can perform (20 CFR 416.960(c) and 416.966).
>
>. . .
>
>10. The claimant has not been under a disability, as defined in the Social Security Act, since December 28, 2004, the date the application was filed (20 CFR 416.920(g)).

(Tr. 25, 28 & 31—33.)

Plaintiff now presents three grounds for reversal:

(1)   The ALJ committed legal error by failing to give controlling weight to the opinion of the treating physician.

(2)   The ALJ committed legal error by failing to fully consider the testimony of the vocational expert.

(3)   The ALJ committed legal error by failing to properly evaluate the Plaintiff's medical impairment of obesity as provided by the Social Security Rulings.

Plaintiff first argues that the ALJ erred by improperly rejecting the opinion of Plaintiff's treating physician. The ALJ need not take the treating physician's word as gospel, but can reject it for good cause. *See Scott v. Heckler*, 770 F.2d 482, 485 (5th Cir. 1985). However, "absent reliable medical evidence from a treating or examining physician controverting the claimant's treating specialist, an ALJ may reject the opinion of the treating physician only if the ALJ performs a detailed analysis of the treating physician's views under the criteria set forth in 20 C.F.R. § 404.1527(d)(2)." *Newton v. Apfel*, 209 F.3d 448, 453 (5th Cir. 2000). "Specifically, this regulation requires consideration of:

>(1) the physician's length of treatment of the claimant,
>(2) the physician's frequency of examination,
>(3) the nature and extent of the treatment relationship,

6

      (4) the support of the physician's opinion afforded by the medical evidence of record,

      (5) the consistency of the opinion with the record as a whole; and

      (6) the specialization of the treating physician.

*Id.* at 456; 20 C.F.R. § 404.1527(d)(2)—(6).

As evidence of his disability, Plaintiff offered a February 20, 2007 opinion by his treating physician, Dr. Mark Heard, M.D., regarding Plaintiff's residual functional capacity. (Tr. 154—58.)[3] The ALJ gave "no weight" to the opinion, finding Dr. Heard's assessment to be "insufficient to support a medical diagnosis." (Tr. 31.) Thus, the ALJ was required to consider each of the Section 404.1527(d) factors listed above. The ALJ first noted that Dr. Heard "has followed the claimant for various medical conditions," but "his reports do not show that he has treated the claimant for orthopedic impairments that would be considered disabling" (Tr. 31), thus showing he considered the length, extent, and nature of the doctor's relationship with Plaintiff. The frequency of Dr. Heard's examinations was described in the ALJ's discussion of Plaintiff's medical record. (Tr. 25, 27 & 29—31.)

Most importantly, it is clear the ALJ considered the extent to which Dr. Heard's opinion was supported by and consistent with the record. The ALJ considered that Dr. J.J. Waller, M.D., examined Plaintiff on March 5, 2005 and found he had a full range of motion of the cervical and thoracic spine, strength and sensation of his upper and lower extremities were normal, and grip strength was good bilaterally. (Tr. 29 & 100.) The ALJ

---

      3. Dr. Heard concluded Plaintiff could stand or walk for two hours in an eight-hour workday, sit for six hours in an eight-hour workday, and would need to sit and stand after short periods. (Tr. 155—56.) He also concluded Plaintiff could occasionally lift ten pounds, rarely stoop or twist, and never crouch/squat or climb ladders or stairs. (Tr. 156—57.) Finally, he found Plaintiff would be absent from work about three days per month. (Tr. 157.)

7

also considered the findings of two state agency medical consultants, Drs. Jimmy L. Breazeale, M.D. and Walter Buell, M.D. (Tr. 104—112 & 145—53), and concurred with their conclusion that "[d]espite [Plaintiff's] impairments, the evidence did not show that his condition was severe enough to keep him from working . . . ." (Tr. 31.) In sum, the ALJ properly took account of the factors the regulations required him to consider in rejecting the treating physician's opinion. Plaintiff's first ground for reversal has no merit.

Next, Plaintiff contends the ALJ erred by failing to fully consider the testimony of the vocational expert (VE), Jesus A. Duarte, who testified at the hearing. (Tr. 281—89.) Specifically, Plaintiff contends the ALJ improperly failed to consider the VE's responses to the following hypothetical questions the ALJ posited during the hearing:

> Q: [I]f you could ambulate just a very short distance and then you'd have to use an assistive device . . . [w]ould that preclude all light work or not?
>
> A: It would preclude light work, your honor.

(Tr. 284.)

> Q: [Missing work] three days or more a month repetitively . . . would preclude work at any level, probably?
>
> A: Yes sir.

(Tr. 285.)

> Q: And if, in fact, you're only on the job a few minutes, you're tired, you're fatigued, you're weak and you need to lie down or you can't concentrate because of side effects of medication or whatever the rationale may be, you start absencing yourself from the work site, you're obviously going to be subject to being terminated if you can't put in a full 40 hour work week, is that correct?
>
> A: That's correct, Your Honor.

(*Id.*)

In addition, Plaintiff contends the ALJ improperly failed to consider the VE's response to the following hypothetical regarding sedentary work posited by Plaintiff's counsel:

> Q: [I]f a person experiencing pain or other symptoms severe enough to interfere with attention and concentration frequently, that would be needed to perform even simple work tasks, would that affect these jobs?
>
> A: If they can't keep up with the production pace, then they wouldn't be able to keep the job.

(Tr. 287—88.)

Each hypothetical was based on either the assessment offered by Dr. Heard or by Plaintiff's own testimony at the hearing. (Tr. 154—58 & 271—81.) As noted *supra*, the ALJ gave no weight to Dr. Heard's conclusions regarding Plaintiff's residual functional capacity. (Tr. 31.) The ALJ also found that "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible." (*Id.*) As the ALJ explained:

> The claimant testified he had many conditions not mentioned in the file. He stated he was frequently dizzy and frequently had fainting spells. There were only two incidents where he had an ischemic attack that quickly resolved while hospitalized. A complete and thorough cardiac work-up did not show any evidence of significant cardiac problems.

(*Id.*) Further, while Plaintiff testified that he required a walker or crutch in order to "walk any kind of distance" (Tr. 275), Dr. Waller did not find that Plaintiff needed any assistance with ambulation, instead determining that Plaintiff "is able to walk heels and toes without pain or difficulty." (Tr. 100.) Moreover, although Plaintiff testified that he was unable to work based on his ailments, Plaintiff told Dr. Heard he did not work because he could not find a job. (Tr. 96.) Dr. Heard also stated, "This patient is obese and

9

otherwise, other than being slightly mentally challenged, should be able to hold some sort of job . . . ." (*Id.*) Finally, the ALJ noted that Plaintiff "walks at home for exercise and he also watches houses and feeds the animals when people go on vacation." (*Id.*) The performance of daily activities such as these is relevant when evaluating the credibility of a Plaintiff's disability claims. *See Reyes v. Sullivan*, 915 F.2d 151, 155 (5th Cir. 1990).

Credibility determinations are entirely within the province of the ALJ, and the ALJ need not give greater weight to a plaintiff's subjective complaints than contrary objective medical evidence. *Falco v. Shalala*, 27 F.3d 160, 164 (5th Cir. 1994). The Court defers to the credibility assessment of the ALJ in this case. Because the above hypothetical questions were based on facts as alleged by sources the ALJ found not to be credible, the ALJ did not err in failing to consider the VE's response to these questions. Plaintiff's second ground for reversal is also without merit.

Finally, Plaintiff argues the ALJ erred by failing to properly evaluate the Plaintiff's medical impairment of obesity as provided by the Social Security Rulings. Specifically, "[T]he Commissioner failed to consider obesity in combination with the other impairments, they only evaluated obesity on its own as a separate impairment not following SSR 02-1p and thus the evaluation is error." (Dkt. No. 9 at 9.) Contrary to Plaintiff's assertion, however, the ALJ did consider Plaintiff's obesity in combination with other impairments. The ALJ first noted that "Sections 1.00, 3.00, and 4.00 define obesity as a medically determinable impairment that often complicates chronic diseases of the cardiovascular, pulmonary, and musculoskeletal systems." (Tr. 27.) The ALJ further determined that, despite his morbid obesity, Plaintiff "does not meet or equal the

10

Listings for severe orthopedic impairment" and "[h]is cardiac condition does not meet or equal the Listings." (*Id.*)

Furthermore, the Fifth Circuit has held that "[i]f an impairment reasonably can be remedied by treatment, it cannot serve as a basis for a finding of disability." *Stillwell v. Cohen*, 411 F.2d 574, 575 (5th Cir. 1969) (claimant's obesity was remedial and therefore not a disability). In *Scott v. Heckler*, the Fifth Circuit clarified its *Stillwell* holding, stressing the importance of determining whether each individual Plaintiff's obesity is in fact remedial. 770 F.2d 482, 486—87 (5th Cir. 1985). Here, the ALJ made a factual determination that Plaintiff's obesity was a remedial condition. The ALJ first distinguished between exogenous obesity, which is due to an oversupply of food, and endogenous obesity, where the caloric count is excessive for some reason lying within the individual's body, noting that "[e]xogenous obesity must be regarded as a remedial condition in the absence of any evidence indicating a metabolic, endocrine or psychogenic disturbance." (Tr. 27.) The ALJ then explained that Plaintiff "has been advised to exercise and he has been told that his sedentary lifestyle is the origin of most of his symptoms and complaints." (Tr. 27.) The ALJ also recognized that Plaintiff "walked for exercise and he has no orthopedic or neurological conditions that would limit his ability to perform all basic work related activity." (Tr. 27 & 66.)[4] Here, as in *Stillwell*, "It is unquestionable that there is substantial medical evidence in the record to sustain the hearing examiner's conclusion that [Plaintiff] could improve his condition by losing weight . . . ." 411 F.2d at 575. Plaintiff's third ground for reversal is also without merit.

---

4. As Plaintiff pointed out, the ALJ mistakenly stated, "At the hearing [Plaintiff] testified that he walked for exercise." (Tr. 27.) Plaintiff made this statement on his "Daily Activity Questionnaire," not during the hearing. (Tr. 66.)

**Conclusion**

For the reasons stated above, Plaintiff's Motion for Summary Judgment (Dkt. No. 9) is DENIED; the Commissioner's Motion for Summary Judgment (Dkt. No. 11) is GRANTED; and the decision of the ALJ is AFFIRMED.

It is so ORDERED.

Signed this 26th day of February, 2009.

JOHN D. RAINEY
UNITED STATES DISTRICT JUDGE